COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Haley
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2082-07-1                      JUDGE ROBERT P. FRANK
                                                    FEBRUARY 12, 2008
MARQUIS D. GRANGER


              FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                               James C. Hawks, Judge

              Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
              McDonnell, Attorney General, on brief), for appellant.

              Von L. Piersall, III, for appellee.


        The Commonwealth appeals, pursuant to Code § 19.2-398, the trial court's decision to grant

Marquis D. Granger's motion to suppress his statement to police along with evidence recovered

from a vehicle in which he was a passenger. The trial court ruled that the police had no reasonable

suspicion to detain Granger. For the reasons stated, we reverse the trial court and remand for trial.

                                        BACKGROUND

        On March 14, 2007 around 11:00 p.m., Portsmouth Police Officers Davis and Ingram were

on patrol in Swanson Homes, a "high drug/high crime" area. They saw a vehicle stopped in the

street. Granger was sitting in the front passenger seat. Larry Booker was on a bicycle next to the

passenger side of the vehicle, leaning inside the vehicle and "making what appeared to be a

hand-to-hand transaction." Officer Davis, who had been employed for six and a half years with the

Portsmouth Police Department and had observed over fifty drug transactions, concluded that what

─────────────────
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

he observed was a hand-to-hand drug transaction.[1] Davis admitted, on cross-examination, that he never saw any money or drugs exchange between Granger and Booker.

The officers exited their police unit with guns displayed and approached Granger's vehicle. Davis recognized Booker as a "narcotics user." He had arrested Booker on four separate occasions at Swanson Homes for possession of drugs, trespassing, and gambling.

The officers, wearing police vests, approached the vehicle. Booker, appearing "nervous," looked at them, stepped back and withdrew his hands from the vehicle. Officer Ingram testified that Granger looked around, looked back at Ingram, and "made a motion towards the front glove box area, the floorboard area, [Granger] kind of leaned down." Ingram drew his weapon, ordered Granger out of the vehicle, and placed Granger in handcuffs for the officers' safety.

Ingram then conducted a "protective sweep" of the passenger area of the vehicle. He opened the glove compartment and found heroin. Granger was then arrested and after receiving his Miranda warnings, he gave an inclupatory statement to police.

Granger argued on brief that he was illegally seized because the police had no reasonable suspicion to detain him.[2] The trial court agreed in finding there was no justification for a warrantless search. The court concluded there was no "hand-to-hand transaction" because no

---

[1] Ingram, who had been involved in over three hundred drug arrests, also characterized Booker's action as a "hand-to-hand transaction."

[2] At oral argument Granger contended his motion below was to suppress his statement to police. However, the record indicates that Granger's motion to the trial court also included a request to suppress the physical evidence obtained as a result of his illegal detention. The content of Granger's statement was not in evidence at the suppression hearing, and the trial court never ruled on its admissibility.

evidence indicated anything was exchanged, nor was there any evidence of any movement of the hands. The trial court further found Granger had no standing to object to the search of the vehicle.[3]

## ANALYSIS

The Commonwealth challenges the trial court's decision that the police had no reasonable suspicion to detain Granger.[4]

On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the trial court's decision constituted reversible error. Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993). We view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). We review the trial court's findings of historical fact only for "clear error," but we review *de novo* the trial court's application of defined legal standards to the particular facts of a case. Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas v. United States, 517 U.S. 690, 699 (1996).

Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Id. at 696 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "There is no 'litmus test' for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." Castaneda v.

---

[3] We note that the trial court ruled Granger had no standing to object to the search of the vehicle. Granger did not object to this ruling or file a cross-appeal pursuant to Code § 19.2-401. Thus, this issue is not subject to appeal.

[4] Granger argues on brief that he was placed in full custodial arrest and that Officer Ingram did not have probable cause to do so. Under the circumstances presented here, Ingram did not need probable cause to place Granger in handcuffs. "Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)).

Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (*en banc*) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the 'totality of the circumstances – the whole picture.'" Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (citing Cortez, 449 U.S. at 417).

> The police officer is also entitled "to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person." James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996). "[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer." Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988).

Alston v. Commonwealth, 40 Va. App. 728, 739, 581 S.E.2d 245, 250-51 (2003).

The trial court factually found that Granger's leaning into the car was not a "hand-to-hand transaction." We are bound by that determination. However, our inquiry does not end here. We must review the totality of the circumstances, not just an isolated fact. The fact the police saw no money or drugs exchanged is not fatal to this analysis.

"Circumstances we have recognized as relevant . . . include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime." Christian v. Commonwealth, 33 Va. App. 704, 714, 536 S.E.2d 477, 482 (2000) (*en banc*) (footnote omitted).

Here, at approximately 11:00 p.m., Granger was a passenger in a vehicle located in a dark, high crime, high drug area. The police, with substantial experience in witnessing drug activities, observed Booker, a known drug user who had been arrested for possession of drugs and trespassing at the same housing project, lean into the car where Granger sat. Booker's hands were inside the vehicle. When Booker recognized the police as they approached the vehicle, he withdrew his hands

- 4 -

and stepped away, acting "nervous." Granger then looked at the approaching police and made a motion toward the glove compartment and the floorboard prompting the police to conduct a "protective sweep."

In <u>United States v. Mayo</u>, 361 F.3d 802 (4th Cir. 2004), the United States Court of Appeals for the Fourth Circuit overturned the district court's grant of a motion to suppress evidence that the police found while conducting a <u>Terry</u> stop and pat down. The court found the police had reasonable suspicion to stop Mayo, based on the totality of the circumstances. <u>Mayo</u>, 361 F.3d at 808. Those circumstances included (1) the encounter occurred in a high-crime area, (2) Mayo's hand movements suggested he was engaged in an illegal activity, (3) Mayo attempted to avoid police scrutiny, and (4) Mayo behaved nervously when approached by the police. <u>Id.</u> at 807-08.

Interestingly, Granger argued at trial that Booker's and Granger's actions "may be consistent with a drug transaction, but it is also consistent with many more completely legal interactions between citizens." This argument underscores the proposition that "[t]he possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop." <u>Raab v. Commonwealth</u>, 50 Va. App. 577, 581, 652 S.E.2d 144, 146 (2007) (*en banc*). "Reasonable suspicion 'need not rule out the possibility of innocent conduct.'" <u>Id.</u> (quoting <u>United States v. Arvizu</u>, 534 U.S. 266, 277 (2002)). There may be circumstances where wholly lawful conduct might justify the suspicion that criminal activity "may be" afoot. <u>Richards v. Commonwealth</u>, 8 Va. App. 612, 617, 383 S.E.2d 268, 271 (1989) (citations omitted).

Based on the totality of the circumstances, we find that the police had reasonable suspicion to detain Granger.[5]  We therefore reverse the decision of the trial court and remand for trial.

<u>Reversed and remanded.</u>

---

[5] In the alternative, the Commonwealth argues that the evidence obtained from the protective sweep was not "fruit of the poisonous tree."  The Commonwealth did not raise this argument below, and we will not consider an alternative argument raised for the first time on appeal.  <u>Brown v. Commonwealth</u>, 270 Va. 414, 421 n.2 620 S.E.2d 760, 764 n.2 (2005).  <u>See also</u> Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.").  Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions.  <u>See</u> <u>Redman v. Commonwealth</u>, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).  We will not consider such an argument *sua sponte*.  <u>Edwards v. Commonwealth</u>, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).