Tuesday          27th

October, 1998.

Curtis S. Rhodes,                                          Appellant,

 against     Record No. 1292-97-2
             Circuit Court No. CR96-792

Commonwealth of Virginia,                                  Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On September 18, 1998 came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 15, 1998, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 15, 1998 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Benton and Elder
Argued at Richmond, Virginia


CURTIS S. RHODES
                                          OPINION BY
v.  Record No. 1292-97-2    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          SEPTEMBER 15, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                    Oliver A. Pollard, Jr., Judge

          Mary Katherine Martin, Senior Assistant
          Public Defender, for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.



     This appeal arises from the trial judge's denial of a motion
to suppress evidence obtained during a warrantless search.
Curtis Rhodes contends the trial judge erred in holding that a
police officer lawfully searched Rhodes incident to issuing him a
summons for violating a city ordinance.  In view of our recent
decision in Lovelace v. Commonwealth, 27 Va. App. 575, 500 S.E.2d
267 (1998), we affirm the trial judge's refusal to suppress the
evidence.

                              I.

     The evidence proved that Rhodes was standing in the front
yard of a private residence when Officer Carpenter saw him set a
beer bottle on the porch of the residence.  After the officer
exited his vehicle and made inquiries of Rhodes regarding the
beer, Rhodes told the officer he set the beer bottle on the porch

"because it was open." The officer testified that he "placed [Rhodes] in custody" for having an open container of alcohol in public in violation of a city ordinance and that his "intentions were to release [Rhodes] on a summons." The officer then asked Rhodes if he had any weapons or narcotics on his person. After Rhodes replied that he did not, the officer "patted [Rhodes'] exterior" and felt a small rock in Rhodes' pants pocket. When the officer asked Rhodes what was in his pocket, Rhodes said he did not know. The officer removed the item from Rhodes' pocket, examined the chunk of white, rock-like substance, and arrested Rhodes for possession of cocaine.

The trial judge overruled Rhodes' motion to suppress and convicted Rhodes of possession of cocaine in violation of Code § 18.2-250.

## II.

Rhodes contends that Code § 19.2-74(A)(2), which requires a police officer under certain conditions to issue a summons or notice to appear and then "release [the individual] from custody," does not authorize the officer to make a "custodial arrest." Therefore, Rhodes contends an officer may not conduct a full search incident to that detention. The Commonwealth contends the officer's search was lawful as a search incident to arrest.

We recently addressed this precise issue in Lovelace v. Commonwealth, 27 Va. App. 575, 500 S.E.2d 267 (1998). As in this

case, a police officer detained Lovelace after the officer saw Lovelace drinking in public from an open container of beer. The officer ordered Lovelace to lie face down on the ground and asked Lovelace if he had any guns or drugs. Id. at 580-81, 500 S.E.2d at 270. When Lovelace did not respond, the officer conducted a patdown search and detected an item in Lovelace's pocket that felt like a bag. The officer removed the item, which contained cocaine and marijuana, and arrested Lovelace for possession of the controlled substances. Id. at 581, 500 S.E.2d at 270. The trial judge denied the motion to suppress the drugs found in Lovelace's pocket. Id. at 582, 500 S.E.2d at 270.

In response to Lovelace's argument that the detention for drinking from an open container of alcohol in violation of Code § 4.1-308 did not authorize the officer to conduct a search incident to arrest, we held that "[t]he existence of probable cause to arrest gave [the officer] constitutional authority to conduct a full search of [the defendant] incident to that arrest." Lovelace, 27 Va. App. at 583, 500 S.E.2d at 271. In our decision, we addressed Code § 19.2-74(A)(2), which provides the following protocol for issuing the appropriate summons or citation for an offense which carries no penalty of active jail time:

> Whenever any person is detained by or is in the custody of an arresting officer for a violation of any county, city, or town ordinance or of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence,

- 4 -

. . . the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving of such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody. However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of [Code] § 19.2-82.

We ruled that Code § 19.2-74 "does not delimit [an officer's] constitutional authority to search," Lovelace, 27 Va. App. at 584, 500 S.E.2d at 271-72, and reasoned as follows:

[T]hat code section contains no language nullifying the officer's ability to search based on the existence of probable cause. We hold that the existence of probable cause to arrest pursuant to the Constitution is both necessary and sufficient. The Constitution does not require a full custodial arrest to permit a complete search of the arrestee; nor does Code § 19.2-74 impose such a requirement. . . . [N]othing in Code § 19.2-74 indicates the legislature's intent to abrogate the authority to search based on probable cause. Finally, even if the legislature did so intend, violation of the statute would not require suppression of evidence obtained in contravention of its terms, absent express provision to the contrary by the legislature.

Lovelace, 27 Va. App. at 584-85, 500 S.E.2d at 272 (citations omitted).

For these reasons, we affirm the trial judge's denial of Rhodes' motion to suppress. See Commonwealth v. Burns, 240 Va. 171, 174-75, 395 S.E.2d 456, 457 (1990) (holding that a decision by a panel of this Court is precedent under the rules of stare

<u>decisis</u>).

<u>Affirmed</u>.

Benton, J., dissenting.

I dissent because Lovelace v. Commonwealth, 27 Va. App. 575, 500 S.E.2d 267 (1998), is contrary to our decision in Stanley v. Commonwealth, 16 Va. App. 873, 433 S.E.2d 512 (1993).  In addition, Lovelace contains a "'flagrant error or mistake,'" see Commonwealth v. Burns, 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990), and should not be relied upon in upholding the search under the circumstances presented in this case.  The principle of stare decisis does not require us to "perpetuate . . . an incorrect application of the law."  Nunnally v. Artis, 254 Va. 247, 253, 492 S.E.2d 126, 129 (1997).  See also Home Brewing Co. v. City of Richmond, 181 Va. 793, 799, 27 S.E.2d 188, 190 (1943) ("The rule of stare decisis does not apply where the former decision has misunderstood or misapplied the law or is contrary to reason.").  Thus, I believe Lovelace should be abandoned by this Court acting en banc.

It is well established that the police may conduct a full search incident to a lawful custodial arrest.  See United States v. Robinson, 414 U.S. 218, 235 (1978).  "[I]t is the fact of custodial arrest which gives rise to the authority to search." Id. at 236 (emphasis added); Gustafson v. Florida, 414 U.S. 260, 266 (1973).  A custodial arrest for a minor offense and search incident to that arrest are constitutionally unreasonable where by statute a state has "abjured the authority to execute custodial arrests for [such minor] offenses."  United States v.

- 7 -

<u>Mota</u>, 982 F.2d 1384, 1388-89 (9th Cir. 1993). <u>See also</u> <u>People v. Bland</u>, 884 P.2d 312, 318 (Colo. 1994) (holding that where statute requires officer to issue notice or summons for violation of minor offense, custodial arrest and search incident to such arrest are prohibited); <u>Barnett v. United States</u>, 525 A.2d 197, 199 (D.C. 1987) (holding that full custodial arrest for violation of pedestrian traffic regulation violates statute requiring issuance of notice of infraction and that search incident to arrest invalid); <u>Thomas v. State</u>, 614 So.2d 468, 471 (Fla. 1993) (holding full custodial arrest and search incident thereto unreasonable when person is charged with violation of minor ordinance under a statute that provides for only limited detention for purpose of issuing ticket, summons, or notice); <u>State v. Martin</u>, 253 N.W.2d 404, 405-06 (Minn. 1977) (holding that custodial arrest for petty misdemeanor offense was illegal where state rules provide that officer must issue citation for misdemeanor not punishable by incarceration and that search incident to arrest was invalid).

We have recognized a significant distinction between custodial and non-custodial arrests. <u>Compare</u> <u>e.g.</u>, <u>Glasco v. Commonwealth</u>, 26 Va. App. 763, 772, 497 S.E.2d 150, 154 (1998) (after placing defendant under "custodial arrest" for failure to have a valid driver's license, officer was authorized to conduct search of defendant incident to that arrest), <u>with</u> <u>Stanley</u>, 16 Va. App. at 877, 433 S.E.2d at 515 (holding that absent a

reasonable articulable suspicion that the operator of a motor vehicle is armed and dangerous, a police officer may not search the operator incident to a routine traffic stop), and May v. Commonwealth, 3 Va. App. 348, 353, 349 S.E.2d 428, 431 (1986) ("'The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda.'" (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984))).  Not only does the Lovelace decision fail to recognize that distinction, it announces a rule that is plainly contrary to our holding in Stanley.

In Stanley, an officer stopped the operator of a motor scooter for not wearing a helmet, a violation of Code § 46.2-910, for which the penalty is a fine of not more than fifty dollars. Stanley, 16 Va. App. at 874, 433 S.E.2d at 513.  We ruled that even though the officer had probable cause to believe the offense occurred and to detain the operator, the officer was not authorized to conduct a search incident to a routine traffic stop unless he could satisfy the requirements of Terry v. Ohio, 392 U.S. 1 (1968).  See Stanley, 16 Va. App. at 875-77, 433 S.E.2d at 514-15.  See also Sattler v. Commonwealth, 20 Va. App. 366, 369, 457 S.E.2d 398, 400 (1995).[1]  The detention in Stanley, as in

_____

[1]In addition to Stanley and Sattler, we also applied the Terry requirements in Nesbit v. Commonwealth, 15 Va. App. 391, 424 S.E.2d 239 (1992).  In Nesbit, we held that an officer's search of the defendant was not an unlawful search or seizure when the officer, who intended to issue the defendant a summons for violating a city ordinance prohibiting drinking alcohol in

Lovelace and this case, was one in which the officer was governed by the protocol of Code § 19.2-74(A)(2).

The distinctive aspect of a non-custodial arrest is embodied in the Code of Virginia. Code § 19.2-74(A)(2) by its express terms does not permit an officer to effect a custodial arrest for a non-jailable offense, except under the limited circumstances specified in the statute. In pertinent part, the statute reads as follows:

> Whenever any person is detained by or is in the custody of an arresting officer for a violation of any county, city, or town ordinance or of any provision of this Code, punishable as a Class 3 or Class 4 misdemeanor or any other misdemeanor for which he cannot receive a jail sentence, except as otherwise provided in Title 46.2, or to the offense of public drunkenness as defined in § 18.2-388, the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and

public, detained the defendant in a "high crime area," noticed the defendant kept his hand in his pants pockets, and suspected the defendant might have a weapon. When the officer asked the defendant to remove his hand from his pocket, the defendant refused and acted fidgety, turned, and attempted to flee. Id. at 393, 434 S.E.2d at 240. We noted the following:

> Whether the circumstances justify an inference that the suspect may be armed and dangerous depends upon "the 'characteristics of the area' where the stop occurs, the time of the stop . . . as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."

Id. (citation omitted). We upheld the search because the circumstances reasonably suggested that Nesbit was armed and dangerous. See id.

place to be specified in such summons or notice. Upon the giving of such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody. However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2-82 [and bring the person before a magistrate].

Code § 19.2-74(A)(2). In addition, Code § 19.2-74(A)(3) provides that "[a]ny person refusing to give such written promise to appear under the provisions of this section shall be taken immediately by the arresting or other police officer before a magistrate or other issuing authority having jurisdiction, who shall proceed according to provisions of § 19.2-82." Thus, except as provided in the statute, the detention of an individual for the purpose of issuing a citation or summons under Code § 19.2-74(A)(2) for a non-jailable offense is not a "custodial arrest" and does not create a right to search that individual incident to that detention.

"A statute that mandates issuance of a notice or summons and provides for release upon signing a promise to appear will thereby prohibit custodial arrests." Bland, 884 P.2d at 318. Thus, a police officer may not search an individual incident to the issuance of a summons or citation for an offense which does not carry an active jail sentence unless: (1) the officer has reasonable suspicion that the individual is armed and dangerous, or (2) to search for evidence or instrumentalities of the specific crime for which the officer has probable cause to issue

the summons or citation or make an arrest.  See 3 Wayne R.

LaFave, Search and Seizure § 5.2(h), at 96, 99 (3d ed. 1996).

See also Stanley, 16 Va. App. at 877, 433 S.E.2d at 515; Bland,

884 P.2d at 321.  This limitation on the power of a police

officer represents both a judicial and legislative recognition

that the dangers presented in the context of a temporary

detention for the purpose of issuing a citation are no greater

than those presented in the stop-and-frisk situations involved in

Terry.  As in Terry, when a police officer issues a summons under

circumstances not warranting a custodial arrest, the

circumstances involve a brief encounter where the mere

possibility of danger cannot justify any and all searches the

officer may wish to conduct.  See LaFave, supra, at 96.  Instead,

the officer must have a reasonable belief that the individual is

armed and dangerous or that the person has secreted on his person

some instrumentalities of the specific crime for which the

officer has probable cause to arrest.  See id. at 99.

In this case, the officer's search of Rhodes violated the

Fourth Amendment's prohibition against unreasonable searches and

seizures.  See Terry, 392 U.S. at 9.

> To conduct a patdown search, a police officer
> must be able to "'"point to specific and
> articulable facts which, taken together with
> rational inferences from those facts,"'
> reasonably lead him to conclude, 'in light of
> his experience, that "criminal activity may
> be afoot" and that the suspect "may be armed
> and presently dangerous."'"

Sattler, 20 Va. App. at 368, 457 S.E.2d at 400 (citations

omitted) (emphasis added).  The officer initially detained Rhodes solely for the purpose of issuing a summons under Code § 19.2-74(A)(2) for violation of a city ordinance prohibiting open containers of alcohol in public.  The officer offered no specific and articulable facts upon which to conclude that Rhodes was armed and dangerous.  Rhodes did not have his hand in his pocket, and he made no suspicious moves or gestures.  See Stanley, 16 Va. App. at 877, 433 S.E.2d at 515 (holding it was unreasonable for police officers effecting a traffic stop to conclude a motor scooter operator was armed and dangerous because police office saw bulge in his pocket).  The officer searched Rhodes solely because of the officer's general policy of searching every person who he places "in custody" and his belief that everyone is dangerous.  However, in every non-custodial detention encounter, "Terry requires reasonable, individualized suspicion before a frisk for weapons can be conducted."  Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990).  The officer's generalized policy of frisking all persons does not satisfy the restrictions imposed by Terry.  "'Indeed, if everyone is assumed to be armed and dangerous until the officer is satisfied that he or she is not, then officers would be able to frisk at will - a result not contemplated by the Fourth Amendment.'"  Sattler, 20 Va. App. at 369, 457 S.E.2d at 400 (citation omitted).  Thus, our decisions in Stanley, Sattler and Nesbit require a reasonable, articulable suspicion that the person may be armed and dangerous before a

- 13 -

police officer may search a person who has been detained for a minor traffic infraction or city ordinance that is a non-jailable offense.

Rhodes was charged with having an open container of beer in a public place.  The officer saw Rhodes with the container, saw the bottle on the porch, and heard Rhodes say that he placed the open bottle of beer on the porch.  The officer was not entitled to search Rhodes.  Under these circumstances, he could only issue Rhodes a summons based on the non-custodial detention.  Because the search incident to this non-custodial detention was unreasonable under the Fourth Amendment, I would reverse the trial judge's refusal to suppress the item the officer seized when he searched Rhodes.