**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT F. SPIERS,

*Plaintiff-Appellee,*

v.

GENE E. SYDNOR,

*Defendant-Appellant.*

⎫
⎬
⎭

No. 00-1712

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-97-841)

Argued: January 22, 2001

Decided: February 26, 2001

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

---

Affirmed in part and reversed in part by unpublished per curiam opinion.

---

### COUNSEL

**ARGUED:** John Adrian Gibney, Jr., SHUFORD, RUBIN & GIBNEY, P.C., Richmond, Virginia, for Appellant. William P. Hanson, Jr., EMROCH & KILDUFF, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:** William B. Kilduff, EMROCH & KILDUFF, L.L.P., Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Richmond County, Virginia Sheriff Gene E. Sydnor appeals the denial of his motions for judgment as a matter of law on Robert F. Spiers' claims for false imprisonment and intentional infliction of emotional distress. Sheriff Sydnor challenges primarily the sufficiency of the evidence regarding each claim. We affirm in part and reverse in part.

### I.

The evidence, viewed in the light most favorable to Spiers, reveals the following. On October 11, 1997, Spiers, who was employed as the director of the Lancaster High School marching band, was leading the band in a parade through Warsaw, Virginia. As the parade progressed, the band moved more slowly than the unit preceding it, causing a gap to develop between the units.

Sheriff Sydnor was controlling traffic flow at an intersection on the parade route. Because the gap between Spiers' band and the unit preceding it had grown so large that one could no longer see the unit ahead over the crest of a hill, Sheriff Sydnor directed Spiers, who was in front of the band, to speed up. Sheriff Sydnor was concerned about the traffic hazard created when a large gap develops in a parade, permitting drivers to pull onto the parade route without recognizing that a parade is in progress. Spiers responded to Sheriff Sydnor that the band was moving as quickly as possible. Sheriff Sydnor said, "[P]ick up the pace, or you are out of the parade." J.A. 94. Spiers again responded, "[W]e are marching as fast as we can." *Id.*

Without giving any further instruction, Sheriff Sydnor then approached and grabbed a banner being carried by two marchers, stopping the marchers and beginning to turn them to the right. Con-

fused as to what Sheriff Sydnor was doing, Spiers instructed the band to continue marching. Sheriff Sydnor immediately turned around, handcuffed Spiers, and informed him that he was under arrest. Sheriff Sydnor required Spiers to sit on the curb of the street and said, "[N]ow sit here and let everybody look at you." *Id.* at 96. Spiers sat handcuffed on the curb for approximately 15 or 20 minutes until an off-duty Virginia State police officer intervened and advised Sydnor that he should take Spiers away if he planned to arrest him. Spiers was then walked approximately two blocks to the police station, where he was questioned and released. No charges were ever filed.

Spiers instituted this suit against Sheriff Sydnor, alleging a cause of action under 42 U.S.C.A. § 1983 (West Supp. 2000), as well as state law claims for false imprisonment and intentional infliction of emotional distress. Following discovery, Sheriff Sydnor moved for summary judgment on several grounds, including qualified immunity. After his motion was denied, Sheriff Sydnor appealed to this court the denial of summary judgment regarding the federal cause of action, and this court reversed, holding that Sheriff Sydnor was entitled to qualified immunity because he had probable cause to arrest Spiers for obstruction of justice. *See Spiers v. Sydnor*, 173 F.3d 852, 1999 WL 125727, at **2 (4th Cir. 1999) (per curiam) (unpublished table decision).

During the trial that followed, Sheriff Sydnor moved for judgment as a matter of law at the close of Spiers' case and at the close of all of the evidence. *See* Fed. R. Civ. P. 50(a). Both motions challenged the sufficiency of the evidence, and both were denied by the district court. A jury awarded Spiers compensatory damages of $10,000 and punitive damages of $5,000 on the false imprisonment claim, and compensatory damages of $5,000 on the claim of intentional infliction of emotional distress. The district court subsequently denied Sheriff Sydnor's renewed motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b).

## II.

Sheriff Sydnor first contends that the district court erred in denying his motions for judgment as a matter of law on the false imprisonment claim. We disagree.

A motion for judgment as a matter of law should be granted if the district court determines that the nonmoving party "has been fully heard . . . and [that] there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." Fed. R. Civ. P. 50(a)(1). We review the denial of a Rule 50(a) motion de novo, viewing the facts in the light most favorable to the nonmoving party. *See Chaudhry v. Gallerizzo*, 174 F.3d 394, 404-05 (4th Cir.), *cert. denied*, 528 U.S. 891 (1999).

The tort of false imprisonment is defined in Virginia as "restraint of one's liberty without any sufficient legal excuse therefor by word or acts which he fears to disregard, and neither malice, ill will, nor the slightest wrongful intentions is necessary to constitute the offense." *Montgomery Ward & Co. v. Freeman*, 199 F.2d 720, 723 (4th Cir. 1952) (internal quotation marks omitted). "False imprisonment may result not only from the arrest of a person without any valid warrant, but also from the unlawful detention of a prisoner who has been lawfully arrested." *Sands & Co. v. Norvell*, 101 S.E. 569, 574 (Va. 1919); *see Mullins v. Sanders*, 54 S.E.2d 116, 120 (Va. 1949).

In Virginia, a uniformed officer generally "may arrest, without a warrant, any person who commits any crime in the presence of the officer." Va. Code Ann. § 19.2-81 (Michie 2000). However, in the case of certain minor violations, such as Class 1 or 2 misdemeanors, the officer generally is limited to issuing a summons for the offense. *See* Va. Code Ann. § 19.2-74(A)(1) (Michie 2000); *cf. Lovelace v. Commonwealth*, 522 S.E.2d 856, 860 (Va. 1999) (explaining that under § 19.2-74, the "'arrest' . . . is effected by issuing a citation or summons rather than taking the suspect into custody").

Sheriff Sydnor asserts that he had probable cause to believe that Spiers had violated Va. Code Ann. § 18.2-460(A) (Michie Supp. 2000), which provides that "any person [who] without just cause knowingly obstructs . . . any law-enforcement officer in the performance of his duties . . . shall be guilty of a Class 2 misdemeanor." Even assuming that Sheriff Sydnor had reason to believe Spiers had committed the Class 2 misdemeanor of obstruction of justice, and therefore that he had a right to issue Spiers a summons, that offense did not give Sheriff Sydnor the right to make the equivalent of a custodial arrest. *See Farrow v. Commonwealth*, 525 S.E.2d 11, 13 (Va.

Ct. App. 2000) (concluding that handcuffing person who committed Class 3 misdemeanor and walking him to security office where summons papers were kept was unlawful because it constituted "the custodial equivalent to arrest"); *Rhodes v. Commonwealth*, 513 S.E.2d 904, 906 n.6 (Va. Ct. App. 1999) (explaining that a "custodial arrest for a minor offense" is illegal when "a state has abjured the authority to execute custodial arrests for [such minor] offenses" (alteration in original) (internal quotation marks omitted)). Because Sheriff Sydnor had no authority to detain Spiers as he did, the district court correctly denied Sheriff Sydnor's motions for judgment as a matter of law on the false imprisonment claim.[1]

### III.

Sheriff Sydnor also contends that the district court erred in denying his motions for judgment as a matter of law on Spiers' intentional infliction of emotional distress claim. We agree.

To establish liability for intentional infliction of emotional distress, a plaintiff must prove four elements: "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). Importantly, under Virginia law "liability arises only when . . . the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* at 163.

We conclude that the distress suffered by Spiers was not sufficiently severe to give rise to liability. *Russo* is instructive in this regard. There, the plaintiff alleged "that she was nervous, could not sleep, experienced stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work." *Id.* (internal quotation marks omitted). Noting that the plaintiff did not claim "that she had any objective physical injury caused by the stress, that she sought

---

[1]Sheriff Sydnor also contends that three erroneous jury instructions may have caused the finding by the jury that he was liable for false imprisonment. Because the evidence of the arrest was uncontroverted and because there was no legal justification for the custodial arrest, any error in the instructions was harmless.

medical attention, that she was confined at home or in a hospital, or that she lost income," the court held that "the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Id.*

Here, the emotional distress proven by Spiers was no more severe than that alleged in *Russo*. Spiers testified that he "was very, very upset, very confused all day" after the detention, that he "lost a lot of sleep" the next week, and that he "couldn't stop thinking about it." J.A. 103-04. He also testified that he gets "a panic kind of feeling" when coming in contact with a police officer. *Id.* at 104. Because the severity of Spiers' emotional distress was not distinguishable from that determined to be insufficient to sustain the cause of action in *Russo*, the district court erred in denying Sheriff Sydnor's motions for judgment as a matter of law on the intentional infliction of emotional distress claim.[2]

IV.

In sum, we affirm the denial of the motions for judgment as a matter of law on the false imprisonment claim and reverse the denial of the same motions on the intentional infliction of emotional distress cause of action.

*AFFIRMED IN PART AND REVERSED IN PART*

---

[2]In light of our ruling, we do not decide whether Sheriff Sydnor's conduct was outrageous.