COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Senior Judge Coleman
Argued at Chesapeake, Virginia


EDWARD BRIAN WILLIAMS

                                        MEMORANDUM OPINION* BY
v.    Record No. 2854-01-1              JUDGE LARRY G. ELDER
                                            MAY 13, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
                  Robert B. Cromwell, Jr., Judge

         Roger K. Grillo for appellant.

         Margaret W. Reed, Assistant Attorney General
         (Jerry W. Kilgore, Attorney General, on
         brief), for appellee.


     Edward Brian Williams (appellant) appeals from his bench

trial convictions for breaking and entering, petit larceny, and

possession of cocaine.  On appeal, he contends the trial judge

erred in denying his motion to suppress both his confession and

cocaine that was seized during a search of his pocket.  We hold

the denial of the motion to suppress was not error because,

although the officer lacked reasonable suspicion to believe

appellant was armed and dangerous, the officer had probable cause

to arrest appellant for breaking and entering and larceny prior to

frisking and questioning him.  Thus, we affirm the convictions.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

The evidence proved that William Sleeth was going to his residence when he saw a microwave oven on appellant's porch. Later, while Sleeth was visiting a neighbor, appellant approached the two men and asked if they were interested in purchasing a microwave oven. After Sleeth determined it was the same microwave oven he had earlier seen on appellant's porch, both declined appellant's offer. When Sleeth left his neighbor's residence, he noticed that the door on Amos Parsons's residence "was sticking out quite a distance." Because this appeared unusual and Parsons was his friend, Sleeth decided to investigate. He noticed Parsons's microwave oven was missing and "recollected the one [appellant had offered to sell him] looked like" Parsons's microwave oven. Sleeth was "pretty familiar" with Parsons's microwave because he had "used it quite frequently" when he lived with Parsons for a week.

After Sleeth contacted Parsons, Parsons called the police and reported a burglary and theft of his microwave oven. When Officer Robbie Fisher and another officer responded, Sleeth described appellant's attempt to sell a microwave. As this was occurring, Officer Fisher saw appellant exit a car and walk to his residence. Officer Fisher, who had known appellant for almost twenty years, said he believed appellant had both a "drinking problem" and a "drug problem."

-

Officer Fisher approached him and asked him "if he had any knowledge about the microwave that was stolen from Mr. Parsons." Appellant said he had no knowledge of it. Officer Fisher then advised appellant that "[he] had a witness that said . . . [appellant] did have the [stolen] microwave earlier in the evening" (emphasis added), and Fisher asked if appellant would come to the police station to resolve the matter. Appellant did not object or respond in any way.

Officer Fisher testified that he did not arrest appellant but "advised [appellant he] was going to pat him down before placing him in the police car." As Officer Fisher "started going toward [appellant] to pat him down," appellant raised his arms. The officer also testified that he had no reason to suspect appellant was armed and dangerous. Instead, for his own safety and the safety of the officer who would be in the car with him and appellant, Fisher "just wanted to pat [appellant] down just to make sure" he was unarmed.

While conducting the pat-down, Officer Fisher felt a "small cylinder type round object" in appellant's front jacket pocket. He removed it and said to appellant, "[T]his is a crack pipe." After appellant and Officer Fisher discussed the pipe, Fisher transported him to the police station. At the police station, appellant waived his Miranda rights and made a statement to Fisher. Appellant admitted that he broke into Parsons's residence

-

and took a microwave oven. He said he took the microwave because Parsons owed him money.

Appellant was charged with the instant offenses and moved to suppress. He argued Officer Fisher lacked reasonable suspicion to believe he was armed and dangerous and could have avoided any threat to his safety by "interrogat[ing]" appellant at the scene rather than transporting him to the station. The Commonwealth argued reasonable suspicion of a completed crime was sufficient to support a frisk when coupled with the heightened safety risk presented by an officer's traveling with a suspect in a vehicle. The trial court held (1) that Officer Fisher acted reasonably in approaching appellant to question him about the burglary and (2) that frisking appellant prior to transporting him in Fisher's police cruiser was reasonable to ensure the officers' safety.

The court subsequently tried appellant on pleas of not guilty and convicted him of breaking and entering, possession of cocaine, and petit larceny.

## II.

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v.

-

Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case, Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

Under settled principles, in order to conduct a pat-down weapons frisk, an officer must (1) rightly be in the presence of the party frisked so as to be endangered if the person is armed, see 4 Wayne R. LaFave, Search and Seizure § 9.5(a), at 246 (3d ed. 1996), and (2) have reasonable suspicion that the person may, in fact, be armed and dangerous, see, e.g., Phillips v. Commonwealth, 17 Va. App. 27, 30, 434 S.E.2d 918, 920 (1993). The requirement that an officer be rightly in the presence of the person frisked means that the officer must have a duty to be in the person's presence, such as to conduct an investigatory stop or to arrest some other person. See LaFave, supra, at 247 (citing Terry v. Ohio, 392 U.S. 1, 32-33, 88 S. Ct. 1868, 1885-86, 20 L. Ed. 2d 889 (1968) (Harlan, J., concurring)). "[A] frisk for self-protection cannot be undertaken when the officer has unnecessarily put himself in a position of danger by not avoiding the individual in question." Id.

Here, at the hearing on his motion to suppress, appellant said Officer Fisher could have "interrogated him" at the scene and argued only that Officer Fisher lacked reasonable suspicion to

-

believe he was armed and dangerous, thereby implicitly conceding

the existence of reasonable suspicion for the detention and

questioning.  The trial court held Officer Fisher's frisking

appellant was reasonable because Fisher (1) had reasonable

suspicion to believe appellant had committed the burglary[1] and (2)

---

[1] The trial court made the following statement in denying the motion:

> [T]he evidence clearly indicates to the
> court that Officer Fisher responded to a
> possible burglary.  When he got there he
> spoke to the victim who was missing a
> microwave.  Then he spoke to the neighbor
> across the street who said that [appellant]
> tried to sell him a microwave, so I don't
> find it unusual at all that . . . Officer
> Fisher[] approached [appellant] knowing his
> history ranging from alcohol to drugs.
> [Appellant] made no objection to going down
> to the station and being questioned.  I
> can't imagine a police department in the
> United States that doesn't have as a matter
> of policy you must search somebody before
> you put them in a cruiser to transport them.
> The officer said he did it for his own
> safety.  I find nothing unreasonable or
> unusual about the officer's actions . . . .

Although the trial court did not use the words, "reasonable suspicion," the court's recitation of the above facts, viewed in conjunction with the Commonwealth's argument that Officer Fisher had reasonable suspicion to believe appellant had been involved in a completed crime, support the conclusion that the trial court simply adopted the Commonwealth's argument as the basis for its denial of the suppression motion.
     Further, "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977).  Here, as discussed infra in the text, clear evidence in the record establishes only that the trial court erred in upholding the pat-down because no evidence proved appellant may have been armed and dangerous and Officer Fisher

-

was about to transport appellant in his police cruiser.  These facts, standing alone, were insufficient to justify the frisk. The trial court did not find appellant was armed and dangerous, and Officer Fisher expressly testified he had no reason to believe appellant was armed and dangerous.  Thus, the trial court's stated basis for denying the suppression motion was erroneous.

Nevertheless, if Officer Fisher had probable cause to arrest appellant, the frisk of appellant was lawful as a search incident to arrest.  Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S. Ct. 2556, 2564-65, 65 L. Ed. 2d 633 (1980) (holding search may precede formal arrest so long as police have probable cause to arrest at time of search).  Although Officer Fisher testified he did not arrest appellant before the frisk search, that circumstance is not dispositive of Fisher's right to search incident to arrest.  Id.

In determining whether an officer had probable cause to arrest, "the officer's subjective beliefs are irrelevant." Dickerson v. Commonwealth, 35 Va. App. 172, 183, 543 S.E.2d 623,

---

expressly testified he had no basis for harboring such a belief. Based on the presumption and the existence of evidence to support a finding that Officer Fisher had reasonable suspicion to believe appellant committed the burglary and theft, we conclude the trial court made this preliminary finding before concluding erroneously that the need to assure officer safety during such an encounter supported the weapons frisk.
Thus, we hold the trial court's denial of the motion constituted a ruling that Officer Fisher had reasonable suspicion for the detention and questioning.

-

628 (2001); see also Whren v. United States, 517 U.S. 806,

812-13, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996).

> The legal standard of probable cause, as the
> term suggests, relates to probabilities that
> are based upon the factual and practical
> considerations in everyday life as perceived
> by reasonable and prudent persons.  The
> presence or absence of probable cause is not
> to be examined from the perspective of a
> legal technician.  Rather, probable cause
> exists when the facts and circumstances
> within the officer's knowledge, and of which
> he has reasonably trustworthy information,
> alone are sufficient to warrant a person of
> reasonable caution to believe that an
> offense has been or is being committed.

Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836

(1981).

The evidence, viewed in the light most favorable to the

Commonwealth, proved that when Officer Fisher first approached

appellant, he knew someone had broken into Parsons's trailer and

taken his microwave oven.  Officer Fisher was aware that

appellant had a "drug problem."  Sleeth told Officer Fisher he

had seen a microwave oven on appellant's porch earlier and that

appellant had offered to sell the microwave to him.  Officer

Fisher told appellant a witness "said [appellant] [had] the

[stolen] microwave earlier in the evening."  Sleeth testified at

trial that he was "pretty familiar" with Parsons's microwave

oven because he had "used it quite frequently" and had cooked

meals in it when he lived with Parsons for a week.

-

We hold this evidence established that Officer Fisher had probable cause to believe appellant possessed the microwave that had been taken by burglary from Parsons's residence. Once the police have probable cause to arrest, it is not "particularly important that the search preceded the arrest rather than vice versa." Rawlings, 448 U.S. at 111, 100 S. Ct. at 2564. Therefore, the trial judge did not err in denying the motion to suppress.

It is true that the issue of probable cause to arrest was not expressly presented to the trial court and that the record contains no indication the trial court considered this issue directly.[2] Nevertheless, appellant implicitly conceded the

---

[2] A panel of this Court previously stated in dicta that the right-result-wrong-reason doctrine "may not be used if the correct reason for affirming . . . was not raised in any manner at trial." Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14 (1992). However, a majority of this Court, sitting en banc, recently implicitly refused to apply that principle where the majority believed that application of the right-result-wrong-reason doctrine did not require findings of fact in addition to those already made by the trial court. McCracken v. Commonwealth, 39 Va. App. 254, 260-62, 572 S.E.2d 493, 496-97 (2002) (en banc) (on appeal of conviction based in part on trial court's ruling that officer had reasonable suspicion to perform weapons frisk that led to discovery of marijuana, holding frisk was justified by existence of probable cause to arrest defendant for trespass without discussing fact that "existence of probable cause to arrest for trespass or any other crime was not raised at trial as a basis for justifying" search, McCracken, 39 Va. App. at 272, 572 S.E.2d at 502 (Elder, J., concurring in part and dissenting in part)); id. at 272, 572 S.E.2d at 502 (Elder, J., concurring in part and dissenting in part) (noting that "the trial court gave no indication that it considered [the issues of probable cause to arrest for trespass or standing to challenge the deputy's entry of the residence where the frisk occurred] or made any of the additional factual

-

existence of reasonable suspicion to "interrogate[]" him about the burglary and theft; the Commonwealth expressly argued the existence of reasonable suspicion regarding theft of the microwave; and the trial court held Officer Fisher had reasonable suspicion for the detention and questioning.  In concluding on appeal that Officer Fisher had probable cause to arrest, we hold only that the uncontested facts establishing reasonable suspicion also proved the "greater" legal theory of probable cause to arrest.  See McLellan v.Commonwealth, 37 Va. App. 144, 155, 554 S.E.2d 699, 704 (2001) (noting that doctrine permitting appellate court to affirm on alternate ground requires that "the correct reason and its factual basis were presented at trial"); Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 314 (1992) (holding doctrine does not apply if additional factual findings are required).  Under these facts, the theory on which we affirm was before the trial court by implication.  Compare Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963) (holding Court could not affirm on ground different from that applied by trial court because doing so would require Court to "recognize and uphold a different defense[,] . . . estoppel by inconsistent conduct, based upon the releases, [which] was not properly asserted in the

---

findings critical to . . . resolution [of those issues]" beyond a subsidiary finding that the person who telephoned police about the defendant's presence in the house was its owner).

pleadings" and was not "before [the trial court] . . . in any manner").

Accordingly, we affirm the convictions.

<u>Affirmed</u>.

Benton, J., dissenting.

The Commonwealth argues on appeal that Officer Fisher's search of Edward Brian Williams was a search incident to arrest. At the suppression hearing and at trial, however, the Commonwealth's attorney did not make this argument. Indeed, prior to this appeal, the Commonwealth never asserted that the officer had probable cause to arrest Williams when he searched him.

At the hearing on the motion to suppress the evidence, the Commonwealth's attorney argued the frisk was lawful because "it was reasonable for the officer to have a fear that [Williams] may be armed and dangerous . . . when he's getting into a [police] vehicle where both the officers are in the front seat with their backs turned to the defendant." When the judge considered the arguments and ruled on the motion, he made findings that do not suggest he ever considered this matter through the prism of a <u>Terry</u> analysis. He found as follows:

> Officer Fisher responded to a possible burglary. When he got there he spoke to [Parsons] who was missing a microwave. Then he spoke to the neighbor across the street who said that [Williams] tried to sell him a microwave, so I don't find it unusual at all that this officer, Officer Fisher, approached [Williams] knowing his history ranging from alcohol to drugs. The defendant made no objection to going down to the station and being questioned. I can't imagine a police department in the United States that doesn't have as a matter of policy you must search somebody before you put them in a cruiser to transport them.

-

These findings do not indicate the judge found that the neighbor informed the officer he recognized the microwave to be the same or similar to the one taken from Parsons's residence. No evidence proved how close the neighbor was to the microwave oven when he saw it on Williams's porch. The officer merely testified that Parsons and the neighbor were explaining to him that Williams "had offered [the neighbor] the microwave earlier in the evening." Indeed, the judge found that the neighbor said Williams "tried to sell him a microwave." (Emphasis added).

The issue whether this evidence established either reasonable suspicion or the greater standard of probable cause was not before the trial judge. The trial judge, therefore, did not make factual determinations about what the officer knew concerning the prior thefts or the identity of the microwave oven. Consequently, he made no findings to establish whether the evidence was sufficient for either reasonable suspicion or probable cause.

Our appellate review is circumscribed by the issues put forth in the arguments advanced at trial and the judge's ruling. We have held that this limitation on our power occurs when the suggested alternative "reason for affirming the trial [judge] was not raised in any manner at trial" and "where, because the trial [judge] has . . . confined [the] decision to a specific ground, further factual resolution is needed." Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313-14

-

(1992).  See also Stateren v. Montgomery Ward and Co., 234 Va.
303, 305-06, 362 S.E.2d 324, 326 (1987) (finding the "right
result wrong reason" rule inappropriate because the trial judge
confined his decision to a specific ground); Sheler v.
Commonwealth, 38 Va. App. 465, 475 n.1, 566 S.E.2d 203, 208 n.1
(2002) (holding that because the trial judge limited his
analysis and failed to resolve a factual matter this Court will
not reach the alternate issue).

The trial judge's findings only reflect the judge's belief
that Williams volunteered to go to the police station for
questioning.  Relying on the officer's testimony that "he
[frisked Williams] for his safety," the trial judge found
"nothing unreasonable or unusual about the officer's actions and
[denied] the suppression motion."  In so finding, the trial
judge apparently relied on his intuition because the officer
unambiguously testified that he did not suspect Williams was
armed and dangerous and that he did not arrest Williams.

The evidence proved that when the officer frisked Williams,
he had not arrested Williams, had not sought or obtained
Williams's consent for the frisk, and had no apprehension that
Williams was armed and dangerous.  The officer testified that
Williams had agreed to get into the police car with the two
officers and accompany them to police headquarters to discuss
the complaint.  He also testified Williams was free not to go to
the station with the officers.  Thus, the officer testified that

-

he searched Williams solely because he was entering the police

car.  We held in Sattler v. Commonwealth, 20 Va. App. 366, 457

S.E.2d 398 (1995), that such a search was unreasonable.

> The Fourth Amendment prohibits
> unreasonable searches and seizures.
> "Whether a search . . . is unreasonable is
> determined by balancing the individual's
> right to be free from arbitrary government
> intrusions against society's countervailing
> interest in preventing or detecting crime
> and in protecting its law enforcement
> officers."  To conduct a patdown search, a
> police officer must be able to "'"point to
> specific and articulable facts which, taken
> together with rational inferences from those
> facts,"' reasonably lead him to conclude,
> 'in light of his experience, that "criminal
> activity may be afoot" and that the suspect
> "may be armed and presently dangerous."'"
> . . . [W]e [have] held that it was
> unreasonable for police officers to conclude
> that a person on a motor scooter was armed
> and dangerous because a police officer saw a
> bulge in the person's pocket following a
> traffic stop.
>
> The evidence at the suppression hearing
> failed to prove that the officer had
> specific and articulable facts upon which to
> conclude that [the individual] was armed and
> dangerous.  The officer initially detained
> [him] solely for the purpose of issuing a
> summons for a traffic infraction.  [He] was
> not under arrest.  The officer offered no
> reason to support a belief that [he] was
> armed or dangerous or that he possessed
> illegal drugs.
>
> The officer searched [him] solely because
> of his general policy of searching every
> person entering his vehicle.  In every
> encounter, "Terry requires reasonable,
> individualized suspicion before a frisk for
> weapons can be conducted."  The officer's
> generalized policy of frisking all persons
> does not satisfy the restrictions imposed by

-

*Terry*. "Indeed, if everyone is assumed to be armed and dangerous until the officer is satisfied that he or she is not, then officers would be able to frisk at will -- a result not contemplated by the Fourth Amendment."

*Id.* at 368-69, 457 S.E.2d at 399-400 (citations omitted). *See also* Harrell v. Commonwealth, 30 Va. App. 398, 517 S.E.2d 256 (1999).

For these reasons, I would hold that the trial judge erred in ruling that the frisk of Williams was a reasonable search under the Fourth Amendment and, consequently, he erred in not suppressing the cocaine and the confession. *See* Davis v. Commonwealth, 37 Va. App. 421, 435, 559 S.E.2d 374, 380 (2002). Thus, I would reverse the convictions.

-